IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **KIMBERLY ANDRESS, and**<br>**GEORGE ANDRESS, Individually and as**<br>**H/W,**<br>              **Plaintiffs,**<br><br>              v.<br><br>**NATIONSTAR MORTGAGE, LLC,**<br>              **Defendant.** | **CIVIL ACTION**<br><br><br><br><br><br>**NO.  15-1779** |

**DuBois, J.**                                                                                                                                                                          **January 6, 2016**

**M E M O R A N D U M**

    **I.**      **INTRODUCTION**

This case arises out of the servicing of plaintiffs Kimberly and George Andress's home mortgage by defendant Nationstar Mortgage, LLC ("Nationstar"). Presently before the Court is Nationstar's Motion to Dismiss Plaintiffs' Second Amended Complaint, filed November 16, 2015. For the reasons set forth below, the Court grants the motion in part and denies it in part. The Court grants that part of defendant's Motion that seeks dismissal of plaintiffs' claims under the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601, et seq.; the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. §201-1, et seq.; common law negligence; the Equal Credit Opportunity Act, 15 U.S.C. § 1694, et seq.; and common law loss of consortium. The Court denies that part of defendant's Motion that seeks dismissal of plaintiffs' claims under the Fair Debt Collections Practices Act, 15 U.S.C. §§ 1692a, 1692e.

    **II.**      **BACKGROUND**

The facts of this case as set forth in plaintiffs' Second Amended Complaint are as follows. Plaintiffs executed a home mortgage "several decades ago with a non-party lender." Second Am. Compl. ¶ 7. The mortgage was purchased by Bank of America ("BOA")

"approximately eight years ago." *Id.* ¶ 8. "In late 2012," the mortgage was sold to Nationstar. *Id.* ¶ 9. Plaintiffs allege that they timely made all payments on the mortgage. *Id.* ¶ 11.

"Around February 2013," Nationstar began calling plaintiffs' home "approximately five times a day requesting six months of non-payment" to BOA. *Id.* ¶ 10. Plaintiffs allege that Nationstar had recorded the mortgage loan as "in default." *Id.* ¶ 30. Plaintiffs aver that this was because BOA failed to credit plaintiffs' timely mortgage payments to their account despite accepting the payments. *Id.* ¶ 12. After being contacted by Nationstar, plaintiffs immediately informed Nationstar "that they had paid in full and asked Nationstar to stop calling." *Id.* ¶ 14. In addition, plaintiffs "in 2013" sent Nationstar multiple e-mails explaining that they had paid in full and attaching receipts of past payments. *Id.* ¶ 15. In addition, at Nationstar's request, plaintiffs provided Nationstar with copies of bank statements and checks evidencing payments made to BOA. *Id.* ¶ 16.

Plaintiffs claim that Nationstar continued to call them at home, sometimes after 9 p.m., in an attempt to collect the alleged debt. *Id.* ¶ 17. Nationstar foreclosed on the mortgage "around March 2013." *Id.* ¶ 19. After foreclosure, plaintiffs continued to tender mortgage payments to Nationstar, but Nationstar returned each payment and continued to charge late fees and interest. *Id.* ¶ 20.

In "fall 2013," plaintiffs accepted a "trial" loan modification offered by Nationstar, which plaintiffs aver was under duress due to "months of harassment and uncertainty." *Id.* ¶ 21. The loan modification was finalized "on or about" August 1, 2014. *Id.* ¶ 22. Plaintiffs allege that they have timely made all payments since the modification, but that beginning in "winter 2015," Nationstar again began attempting to collect allegedly past due payments. *Id.* ¶ 23-25. .

2

On April 6, 2015, plaintiffs filed suit in this Court, naming BOA and Nationstar as defendants. Following the filing of BOA's first Motion to Dismiss on June 4, 2015, plaintiffs filed a First Amended Complaint on July 13, 2015. Plaintiffs' First Amended Complaint included claims for (1) violation of the Fair Debt Collections Practices Act ("FDCPA"), 15 U.S.C. §§ 1692a, 1692e; (2) violation of the Equal Credit Opportunity Act ("ECOA"),15 U.S.C. § 1694, et seq.; (3) violation of the Pennsylvania Fair Credit Extension Uniformity Act ("FCEUA"), 73 P.S. § 2270; (4) violation of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601, et seq.; (5) violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. § 201-1, et seq.; and (6) common law claims for loss of consortium.

BOA then filed a Motion to Dismiss all claims asserted against it in the First Amended Complaint. By Memorandum and Order dated September 30, 2015, the Court granted BOA's Motion to Dismiss all claims against BOA. The claims against BOA pursuant to FDCPA, ECOA, FCEUA, and UTPCPL, and for common law loss of consortium were dismissed with prejudice because the Court concluded that amendment would be futile. The RESPA claims against BOA was dismissed without prejudice and plaintiffs were granted leave to file a Second Amended Complaint. Also on September 30, 2015, Nationstar filed a Motion to Dismiss the First Amended Complaint. On October 29, 2015, plaintiffs filed a Second Amended Complaint, and the Court, by Order dated November 2, 2015, denied Nationstar's Motion to Dismiss the First Amended Complaint as moot.

Plaintiffs' Second Amended Complaint asserts claims only against Nationstar based on consumer protection statutes and Pennsylvania common law. Specifically, the Second Amended Complaint includes claims for (1) violation of FDCPA, (2) violation of RESPA, (3) violation of

UTPCPL, (4) common law negligence, (5) violation of ECOA, and (6) common law loss of consortium. Nationstar filed the instant Motion to Dismiss on November 16, 2015, in which it seeks dismissal of all of plaintiffs' claims with prejudice. This Court has jurisdiction pursuant to 28 U.S.C. §1331 and § 1367. For the reasons that follow, the Court grants in part and denies in part the Motion to Dismiss.

### III. APPLICABLE LAW

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that, in response to a pleading, a defense of "failure to state a claim upon which relief can be granted" may be raised by motion to dismiss. To survive a motion to dismiss, a plaintiff must allege facts that "'raise a right to relief above the speculative level.'" *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A district court first identifies those factual allegations that constitute nothing more than "legal conclusions" or "naked assertions." *Twombly*, 550 U.S. at 555, 557. Such allegations are "not entitled to the assumption of truth" and must be disregarded. *Iqbal*, 556 U.S. at 679. The court then assesses "the 'nub' of the plaintiff[']s] complaint—the well-pleaded, nonconclusory factual allegation[s]"—to determine whether it states a plausible claim for relief. *Id.*

"[I]f a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips v. County of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008). However, the Court may dismiss a claim with prejudice based on "bad faith or dilatory motives, truly undue or unexplained delay,

4

repeated failures to cure the deficiency by amendments previously allowed, or futility of amendment." *Lorenz v. CSX Corp.*, 1 F.3d 1406, 1414 (3d Cir. 1993).

## IV.   DISCUSSION

### 1.   FDCPA Claims

Nationstar argues that plaintiffs' FDCPA claims must be dismissed because Nationstar is not a debt collector as defined by FDCPA. The Court rejects this argument and denies Nationstar's Motion to dismiss the FDCPA claims.

FDCPA forbids certain unfair or harassing practices in the collection of debts by statutorily-defined "debt collectors." 15 U.S.C. § 1692a-j. Under FDCPA, "debt collector" means "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692(a)(6). Specifically excluded from this definition is "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . (iii) concerns a debt which was not in default at the time it was obtained by such person." 15 U.S.C. § 1692(a)(6)(F). "[O]ne attempting to collect a debt is a 'debt collector' under the FCPA if the debt in question was in default when acquired." *F.T.C. v. Check Investors, Inc.*, 502 F.3d 159, 173 (3d Cir. 2007); *see also Bridge v. Owen Federal Bank, FSB*, 681 F.3d 355, 359 (6th Cir. 2012) ("For an entity that did not originate the debt in question but acquired it and attempts to collect on it, that entity is either a creditor or a debt collector depending on the default status of the debt at the time it was acquired.").

Nationstar argues that the debt at issue in this case was not a debt "asserted to be owed or due another," but rather was a debt owed directly to it because Nationstar purchased BOA's

5

entire interest in the mortgage. However, the question of whether Nationstar is a debt collector under FDCPA depends on whether it acquired a loan that was already in default. Plaintiffs allege that the loan was in default at the time Nationstar acquired it from BOA. Second Am. Compl. ¶ 30 ("At all times material, Nationstar has recorded Plaintiffs' loan(s) as in default."). This allegation is plausible under the facts alleged in the Second Amended Complaint. Nationstar acquired the debt in "late 2012" and in early 2013 began to attempt to collect six months of back payments owed to BOA. Second Am. Compl. ¶¶ 11-12. Thus, the Court concludes that plaintiffs have adequately pled facts, which, if true, establish that Nationstar qualifies as a debt collector for purposes of FDCPA and thus have pled plausible claims under the statute.

### 2. RESPA Claims

Nationstar argues that plaintiffs' RESPA claims must be dismissed because they are insufficiently plead. The Court agrees and dismisses plaintiffs' RESPA claims for failure to adequately plead the elements of a qualified written request and a causal link between the alleged violation and the alleged damages.

RESPA imposes certain notice requirements on servicers of "federally related mortgage loans." 12 U.S.C. § 2605. One of these requirements is that a loan servicer must respond to a "qualified written request" from a borrower. 12 U.S.C. § 2605(e)(1)-(2). A qualified written request is "a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer that—(i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." 12 U.S.C. § 2605(e)(1)(B). The loan servicer must respond to a qualified

written request within thirty days. 12 U.S.C. § 2605(e)(2). Failure to respond makes the loan servicer liable to the borrower for each such failure in "an amount equal to the sum of—(A) any actual damages to the borrower as a result of the failure; and (B) any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of [RESPA], in an amount not to exceed $2000." 12 U.S.C. § 2605(f)(1). To state a claim under the qualified written request provision of RESPA, plaintiff "must, at a minimum, allege that the breach resulted in actual damages." *Jones v. Select Portfolio Servicing, Inc.*, Civil Action No. 08-972, 2008 WL 1820935, at *9 (E.D. Pa. Apr. 22, 2008). Plaintiff must also "allege a causal link between the alleged violations and the alleged damages." *Id.* at *10.

Plaintiffs' Second Amended Complaint fails to adequately plead facts showing that the e-mails were qualified written requests and the required causal connection between the RESPA violation and the alleged damages. Plaintiffs allege that they sent e-mails to Nationstar in 2013 explaining that they had paid the loan and attached their past payments. Second Am. Compl. ¶ 36. In addition, plaintiffs allege that "Nationstar . . . failed to respond in accordance with RESPA" and "failed to provide plaintiffs with an appropriate written explanation or clarification as to why [Nationstar] believes the account to be accurate as determined by defendants." Second Am. Compl. ¶¶ 38-39. As a consequence, plaintiffs claim that they "have been damaged by the unlawful conduct, material misrepresentations of the defendants, and by the negligence of the defendants." Second Am. Compl. ¶ 42. Plaintiffs' nonspecific allegations that their e-mails constituted qualified written requests and that Nationstar failed to comply with RESPA amount to conclusory statements of RESPA's requirements and a demand for damages, and are thus not entitled to an assumption of truth. *Iqbal*, 556 U.S. at 679.

Plaintiffs do not identify the dates or contents of the qualified written requests to demonstrate that the RESPA requirements for a qualified written request were met. Plaintiffs also fail to plead facts which, if true, establish that Nationstar's responses did not satisfy RESPA's requirements. Furthermore, the Second Amended Complaint does not plead facts connecting the alleged RESPA violation—failing to respond to qualified written requests—to the damages sought. Plaintiffs have thus failed to allege sufficient facts, taken as true, to state a plausible claim under RESPA.

The Court concludes that dismissal of the RESPA claims should be without prejudice. This is the first time that the Court has addressed plaintiffs' RESPA claims against Nationstar. In the Memorandum and Order dated September 30, 2015, the Court dismissed plaintiffs' RESPA claims against BOA on the ground that plaintiffs had failed to adequately plead specific facts in support of their RESPA claims. Plaintiffs then filed the Second Amended Complaint. The Second Amended Complaint adds some additional detail regarding the qualified written requests, but, as discussed above, fails to adequately plead a RESPA claim. Because the Court has not previously addressed the RESPA claims against Nationstar and because the Second Amended Complaint adds sufficient additional detail to suggest that amendment would not be futile, the Court grants leave to amend the RESPA claims in accordance with this ruling.

### 3. UTPCPL Claims

Nationstar argues that plaintiffs' claims under UTPCPL must be dismissed because they are inadequately pled. The Court agrees and dismisses the UTPCPL claims.

To assert a claim under UTPCPL, plaintiffs must show that defendant engaged in "unfair methods of competition" or "unfair or deceptive acts or practices" in the conduct of trade or commerce. 73 P.S. ¶ 201-3. In addition to statutorily enumerated unfair practices, under the

"catch-all" provision, defendant is liable for "engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or misunderstanding." 73 P.S. § 201-2(4)(xxi). To assert a private right of action under UTPCPL, plaintiffs must have suffered an "ascertainable loss . . . as a result of the use or employment by any person of a method, act, or practice declared unlawful" by § 201-3. 73 P.S. § 201-9.2. Private plaintiffs alleging deceptive conduct under the catch-all provision must make "a showing of justifiable reliance, not simply a causal connection between the misrepresentation and the harm." *Hunt v. U.S. Tobacco Co.*, 538 F. 3d 217, 222 (3d Cir. 2008) (citing *Weinberg v. Sun Co.*, 777 A.2d 442 (Pa. 2001)). Justifiable reliance requires plaintiffs to show that defendant's conduct caused plaintiffs to engage in "detrimental activity." *Id.* at 227.

Plaintiffs' Second Amended Complaint fails to identify a specific provision as the basis for the UTPCPL claims. The entirety of plaintiffs' UTPCPL claims is an incorporation clause and two sentences:

> 48. The UTPCPL proscribes, *inter alia*, engaging in any "unfair or deceptive acts or practices" either at, prior to, or subsequent to a commercial transaction.
> 49. The actions of Defendants constitute unfair or deceptive acts or practices under UTPCPL, additionally including but not limited to Defendants failed to comply with the FDCPA and RESPA.

Second Am. Compl. ¶¶ 48-49. In their Response to the Motion to Dismiss, plaintiffs identify two specifically enumerated practices on which the UTPCPL claims are based. First, plaintiffs identify 73 P.S. § 201-2(v), which forbids "representing that goods and services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation or connection that he does not have." Second, plaintiffs point to 73 P.S. § 201-2(xv), which proscribes "knowingly

9

misrepresenting that services, replacements or repairs are needed if they are not needed." Plaintiffs also seek to invoke UTPCPL's catch-all provision.

The Court concludes that plaintiffs have failed to plead any facts that could support a claim under either § 201-2(v) or § 201-2(xv). The Second Amended Complaint does not allege a sale of goods or services, nor does it allege any facts regarding any misrepresentation of goods or services. Plaintiffs' bare assertion that these provisions of UTPCPL were violated is not sufficient to defeat a motion to dismiss.

Furthermore, the Second Amended Complaint fails to state a claim under the catch-all provision because plaintiffs have not pled justifiable reliance. Plaintiffs aver that UTPCPL is not a codification of common law fraud, but the cases cited by plaintiffs do not support plaintiffs' allegation that "justifiable reliance . . . is not an element of . . . UTPCPL." In *DeArmitt v. New York Life Insurance Company*, cited by plaintiffs, the Pennsylvania Superior Court ruled that a showing of justifiable reliance was an element of a UTPCPL claim. 73 A.3d 578, 592-93 (concluding that factfinder must "determine whether the purchasers justifiably relied upon the agent's representations to the extent necessary to support their UTPCPL claims"). The Second Amended Complaint does not identify any actions or statements by Nationstar on which plaintiffs justifiably relied, nor does it identify how Nationstar caused plaintiffs to engage in detrimental activity.

The Court concludes that the dismissal of the UTPCPL claims should be without prejudice. As with the RESPA claims, the Court dismissed plaintiffs' UTPCPL claims against BOA without prejudice in the September 30, 2015, Memorandum and Order. The Court determined that plaintiffs' First Amended Complaint failed to state a claim under UTPCPL because it failed to plead justifiable reliance. In the Second Amended Complaint, the plaintiffs

have not included any new factual allegations with respect to the UTPCPL claims and their Response incorrectly states once again that they need not do so. Nevertheless, the Court cannot conclude based on the Second Amended Complaint that amendment would be futile. While repeated failure to cure would ordinarily be grounds for dismissal with prejudice, having determined that plaintiffs should have the opportunity to re-plead the RESPA claim, the Court will dismiss the UTPCPL claims without prejudice as well. The Court grants leave to amend the UTPCPL claims in accordance with this ruling.

### 4. Negligence Claims

Nationstar argues that plaintiffs' negligence claims must be dismissed because plaintiffs have failed to allege a duty owed by Nationstar to plaintiffs. The Court agrees that any negligence claim in this case is barred by Pennsylvania's "gist of the action" doctrine and dismisses plaintiffs' negligence claims.

"Under Pennsylvania law, the 'gist of the action' doctrine 'precludes plaintiffs from recasting ordinary breach of contract claims into tort claims.'" *Jones v. ABN Amro Mortg. Group, Inc.*, 606 F.3d 119, 123 (3d Cir. 2010) (quoting *Erie Ins. Exch. v. Abbott Furnace Co.*, 972 A.2d 1232, 1238 (Pa. Super. Ct. 2009)). The gist of the action doctrine bars tort claims that (1) arise solely from a contract between the parties, (2) where the duties allegedly breached were "created and grounded in the contract itself," (3) where "the liability stems from a contract," and (4) where the tort claim "essentially duplicates a breach of contract claim or the success of which is wholly dependent on the terms of a contract." *eToll, Inc. v. Elias/Savion Advertising, Inc.*, 811 A.2d 10, 19 (Pa. Super. Ct. 2002) (citations and quotations omitted). When "a defendant's alleged failure to perform its duty under the contract is transformed into a claim that this failure

amounts to" negligence or fraud, the gist of the action doctrine bars the tort claim. *CRS Auto Parts, Inc. v. Nat'l Grange Mut. Ins. Co.*, 645 F. Supp. 2d 354, 377 (E.D. Pa. 2009).

In this case, Count IV of the Second Amended Complaint includes an incorporation sentence and just one paragraph on liability:

> 51. Defendant's negligence included failing to verify/investigate whether the aforesaid loans were actually delinquent.

Second Am. Compl. ¶ 51. Plaintiffs do not identify the source of any duty of care imposed on Nationstar and the only possible source of such a duty in this case is the mortgage agreement itself. This claim amounts to an allegation that Nationstar failed to adequately credit payments made by plaintiffs as required by the mortgage agreement and is thus equivalent to a claim for breach of contract. *See, e.g.*, *Sarsfield v. Citimortage, Inc.*, 707 F. Supp. 2d 546, 554 (M.D. Pa. 2010) (concluding that mortgagee's claim against mortgagor for negligently failing to adequately credit escrow payments was barred by gist of the action doctrine); *Clark v. EMC Mortgage Corp.*, Civil Action No. 08-1409, 2009 WL 229761, at *5 (E.D. Pa. Jan. 29, 2009) (granting mortgagor's motion to dismiss mortgagee's fraud and misrepresentation claims arising out of loan modification as barred by the gist of the action doctrine). Accordingly, plaintiffs' negligence claims are barred by the gist of the action doctrine and the Court grants Nationstar's Motion to Dismiss these claims. The Court further concludes that amendment of the negligence claims would be futile and dismisses them with prejudice.

### 5. ECOA Claims

Nationstar argues that plaintiffs' ECOA claims must be dismissed because the Second Amended Complaint does not allege an adverse action and does not allege that plaintiffs were members of a protected class. The Court agrees that plaintiffs have failed to adequately allege that they are members of a protected class and dismisses plaintiffs' ECOA claims.

To establish a prima facie case under ECOA, plaintiffs must show that (1) they were members of a protected class; (2) they applied for credit from defendant; (3) they were otherwise qualified for the credit; and (4) despite being qualified, they were denied credit. *Chiang v. Veneman*, 385 F.3d 256, 259 (3d Cir. 2004). To satisfy the first element, plaintiffs must demonstrate that they were discriminated against in any aspect of a credit transaction on the basis of "race, color, religion, national origin, sex or marital status, or age," whether "all or part of the applicant's income derives from any public assistance program," or whether "the applicant has in good faith exercised any right under this chapter." 15 U.S.C. § 1691(a). "Adverse action" is defined under the statute as "a denial or revocation of credit, a change in the terms of an existing credit arrangement, or a refusal to grant credit in substantially the amount or on substantially the terms requested." 15 U.S.C. § 1691(d)(6).

In this case, plaintiffs aver that:

> 54.   At all times material, defendants were in violation of ECOA . . . including but not limited to defendants' failing to report to plaintiff the adverse action of its making and then rescinding the loans.
> 55.   Nationstar committed an adverse credit action by initiating foreclosure against plaintiff and not honoring the modification—despite the fact that plaintiffs qualified and made all payments.

Second Am. Compl. ¶¶ 54-55. Read liberally, the Second Amended Complaint alleges an adverse action, that Nationstar agreed to a loan modification and subsequently revoked that modification, constituting a "revocation of credit," without sending the notice required by the statute. Second Am. Compl. ¶¶ 22, 24, 54-55. However, the Second Amended Complaint is devoid of any facts demonstrating that the ECOA violation was on the basis of "race, color, religion, national origin, sex or marital status, or age" or in retaliation for plaintiffs' exercise of a right protected by ECOA. Accordingly, plaintiffs have failed to allege facts sufficient to establish

that they are members a class protected by ECOA and the Court grants Nationstar's Motion to Dismiss the ECOA claim.

As with the UTPCPL claims, this is now plaintiffs' third attempt to plead cognizable claims under ECOA. Nevertheless, the Court cannot conclude that amendment of the ECOA claims would be futile. Accordingly, the Court dismisses the ECOA claims without prejudice and grants leave to amend in accordance with this ruling.

### 6.  Loss of Consortium Claims

Nationstar argues that plaintiffs' loss of consortium claims fail as a matter of law. The Court agrees and dismisses the loss of consortium claims against Nationstar with prejudice.

Pennsylvania recognizes a common law tort for loss of consortium. "[A]ny interference with this right of consortium by the negligent injury to one spouse, should afford the other spouse a legal cause of action to recover damages for that interference." *Burns v. Pepsi-Cola Metropolitan Bottling Co.*, 510 A. 2d 810 (Pa. Super. Ct. 1986) (quoting *Leo v. Bottman*, 40 Wash. Co. 105, 108-109 (Pa. 1960)). "It is well settled that the claim is derivative, emerging from the impact of one spouse's *physical* injuries upon the other spouse's marital privileges and amenities." *Darr Const. Co. v. W.C.A.B. (Walker)*, 715 A.2d 1075, 1080 (Pa. 1998) (emphasis added).

In ruling on BOA's Motion to Dismiss, the Court concluded that plaintiffs had failed to allege any physical injuries to a spouse and that violation of consumer protection statutes could not support a claim for loss of consortium. A claim for loss of consortium in the absence of physical injury is not cognizable under Pennsylvania law and plaintiffs' Second Amended

Complaint includes no allegation of any physical injury to either spouse.[1] Thus, the Court concludes that amendment of the loss of consortium claims would be futile and dismisses these claims with prejudice.

### V.     CONCLUSION

For the foregoing reasons, the Court denies Nationstar's Motion to Dismiss plaintiffs' FDCPA claims. The Court grants Nationstar's Motion to Dismiss plaintiffs' claims for negligence and loss of consortium and these claims are dismissed with prejudice. The Court grants Nationstar's Motion to Dismiss plaintiffs' claims under RESPA, UTPCPL, and ECOA without prejudice to plaintiffs' right to file a third amended complaint within twenty (20) days if warranted by the facts and applicable law. An appropriate order follows.

---

[1] The cases cited in plaintiffs' Response are not to the contrary. *See Richetti v. Saks Fifth Ave.*, Civil Action No. 11-256, 2013 WL 2802476, at *9 (considering summary judgment motion without reaching issue of physical injury); *Reinhold v. County of York, Pa.*, Civil Action No. 11-605, 2012 WL 4104793, at *22-23 (M.D. Pa. Aug. 31, 2012) (ruling loss of consortium cognizable but not reaching issue of whether physical injury required); *Vallone v. Elec. Data Sys.*, Civil Action No. 04-4744, 2005 WL 318754, at *2 (E.D. Pa. Feb. 9, 2005) (considering motion for judgment on the pleadings on other claims and not reaching issue of loss of consortium claim); *Pahle v. Colebrookdale Twp.*, 227 F. Supp. 2d 361, 375 (E.D. Pa. 2002) ("A wife who suffers a loss of consortium does not herself sustain physical injury, but rather, damaged marital expectations as a result of the [physical] injuries to her husband."); *Tukesbrey v. Midwest Transit, Inc.*, 822 F. Supp. 1192, 1199 (W.D. Pa. 1993) (considering motion in limine and not reaching issue of physical injury).